## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 23 2015, 9:15 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Florence Anne Briggs
Briggs Law Office
Flora, Indiana

ATTORNEY FOR APPELLEE

Bernice T. Banks
Burgeon Legal Group, Ltd. Co.
Pawleys Island, South Carolina

# IN THE
# COURT OF APPEALS OF INDIANA

In re: the Estate of Robert F. Darter

Richard Darter,

*Appellant / Heir-At-Law,*

v.

Bernice T. Banks,

*Appellee / Personal Representative*

June 23, 2015

Court of Appeals Case No.
79A05-1409-ES-453

Appeal from the Tippecanoe Circuit Court

The Honorable Donald L. Daniel, Judge

Case No. 79C01-1403-ES-9

**Vaidik, Chief Judge.**

# Case Summary

[1] Robert F. Darter died intestate. His assets at the time of his death included real and personal property in Carroll County, Indiana; he also owed $37,294.60 to

Signature Healthcare of Lafayette, the long-term-care facility where he died. Signature petitioned the trial court as a creditor to appoint a personal representative for probate of estate. Notice of the estate matters—including the notice of administration and appointment of a personal representative, the petition to sell the estate property, and the notice of hearing on the petition—was sent to all interested parties, including the decedent's son, Richard, who was allegedly living on the estate property. Some of the notices were returned as undeliverable weeks after they were sent; but the notice of administration—which was also published in accordance with statute—and the notice of hearing were not returned as undeliverable. The trial court approved the sale of the estate property. Thereafter, Richard appeared with counsel, filing a motion to correct errors alleging that he had not received proper notice of the proceedings and the sale was improper because the estate property was sold for less than fair-market value. Following a hearing, the trial court denied Richard's motion. We affirm.

# Facts and Procedural History

[2] On January 25, 2014, Robert F. Darter ("the Decedent") died intestate; appellant Richard Darter ("Richard") is his son. At the time of his death, the Decedent was a resident at Jackson County Schneck Memorial Hospital d/b/a Signature Healthcare of Lafayette ("Signature"), a long-term-care facility, and owed Signature $37,294.60. The Decedent's assets were: a Salin Bank checking

account with a balance of $7484.59 and real and personal property located at 5460 South 225 East, in Cutler, Carroll County, Indiana ("the Property").

[3] In March 2014, Signature petitioned the trial court as a creditor to appoint a personal representative—specifically, Morgan L. Wills of Burgeon Legal Group, Ltd. Co. ("Burgeon Legal group"), counsel for Signature—for probate of the estate and issuance of letters testamentary. On March 17, the trial court approved the petition and appointed Wills as the personal representative of the Estate, ordering notice by publication and ordinary mail ("the March 17 Order"). Notice of administration was published in the *Lafayette Journal and Courier* on March 26 and April 2. The mailing distribution list included the Decedent's siblings and children, including Richard, whose listed address was that of the Property. The notice of administration sent to Richard at the Property was not returned to the court as undeliverable.

[4] In May, Wills filed the verified inventory, which provides in part:

> The known property of the Estate is as follows:
>
> REAL PROPERTY
>
> 1. Robert F. Darter, the [D]ecedent . . . , owned real property located at 5460 South 225 East in Cutler, Carroll County, Indiana [legal description omitted] . . . .
>
> 2. The Property was sold at tax sale on September 12, 2013 for failure to pay real estate taxes . . . .
>
> 3. The Property is currently occupied by Richard Darter, the Decedent's son, who has no known legal ownership to the Property.
>
> 4. The tax-assessed value of the Property is $120,700. . . .
>
> * * * * *

7. The personal representative has been unable to gain access to the Property as a result of Richard Darter's occupancy and there is no way to evaluate the extent or value of the[] [furniture or household] goods at this time. . . .

Appellant's App. p. 43-44 (formatting altered). Attached to this verified inventory is a warranty deed and a multi-page report of the Property prepared by Beacon/The Schneider Corporation on January 30, 2014. *See id*. at 49-53. That report concluded that the "Assessed Value" and the "True Tax Value" of the Property on March 1, 2013, were both $120,700. *See id*. at 51.

[5] At the end of May, Wills filed a petition to sell the Estate's real and personal property and to pay costs and expenses related to the sale ("the Petition to sell the Property"), and a petition to use the checking account funds to redeem the Property from the September 12, 2013 tax sale (collectively, "the Petitions"). Attached as Exhibit C to the Petition to sell the Property was a May 23 letter written by Jim Romanski, a licensed real-estate agent with Keller Williams Realty and Vice-President of the Romanski Group. In this letter, Romanski writes in part as follows:

> After further review of the [P]roperty . . .[,] I have determined that a fair price to list it at in the open market would be anywhere f[ro]m [$]65,000-80,000. Unfortunately 75% of the tillable acreage is located in a very low area and the run off of the surrounding properties has caused a swamp[-]like environment . . . . I have not placed any value in the structures located on the property because just by road view it is evident that the cost of repairing the deferred maintenance would be greater than what the value of the property would be. The property is loaded with vehicles and miscellaneous machines that are broken down and regarded as trash. It is my professional opinion that the court should accept the offer that was written by the buyer of $50,000. Taking into consideration that the buyer is willing to take on the

responsibility of removing what will likely be [an] uncooperating resident, the costs of removing deb[ris], and the current state of the dwelling, and the limited loans available for these types of properties, I am not sure we could sell it for fair[-]market value. I have shopped it to surrounding farmers and none of them have been interested due to the quality of the tillable land.

*Id*. at 80.

[6] Around the same time, Signature filed another petition requesting the trial court to resign Wills and appoint Bernice T. Banks, also of Burgeon Legal group, as the successor personal representative of the Estate. The court granted the petition appointing Banks as personal representative and ordering that the letters of administration be issued to Banks ("the May 29 Order"). Appellee's App. p. 8.

[7] On June 4, the trial court issued a notice that a hearing would be held on the Petitions on June 30, and directing the clerk to send notice to interested parties by ordinary mail; the list of recipients included Richard at the Property's address. *See id*. at 13. The clerk filed a certificate of mailing on June 4. Richard's copy of the notice of hearing was not returned to the court as undeliverable.

[8] The trial court held a hearing on the Petitions on June 30, after which the court granted the Petitions, issuing an order authorizing the sale of the Property to Daniels, LLC, for $50,000.00, and a separate order authorizing the personal representative to use the checking-account funds to redeem the Property ("the June 30 Orders"). Appellant's App. p. 97, 99. On July 14, the Property was sold to Daniels, LLC for $50,000.00. *See id.* at 117. Notice of this sale was

served on, among others, Richard Darter c/o Florence Ann Briggs, P.O. Box 2, Flora, IN 46929. Briggs is Richard's trial and appellate counsel in this matter.

[9]     On August 4, 2014, Richard filed a motion to correct errors with the trial court, challenging the sale of the Property. In his motion, Richard alleged that he did not receive copies of the Petitions and that court orders that were sent to him— the May 29 Order and the June 30 Orders—were returned to the court as "no mail receptacle, unable to forward." *Id*. at 104-05. Richard does *not* claim, however, that he did not receive the March 17 notice of administration or the June 4 notice of the June 30 hearing. Richard's motion also includes the following:

> (3) The [D]ecedent owned real estate . . . consisting of 33.17 acres and 1,444,885 square feet. []
>
> (4) On or about May 30, 2014, the Court[-]appointed Personal Representative filed a Verified Inventory alleging (in part) that the assessed valuation of said real estate is $120,700.00. Documents which are incorporated herein as "Exhibit B" from Carroll County, Indiana, show the true tax value of the farmland to be $57,320.00 and the homestead value to be $25,180.00 being a total of $82,500.00.
>
> * * * * *
>
> (12) On May 23, 2014, Jim Romanski of The Romanski Group of Indianapolis, Indiana, executed a document stating (in part), "It is my professional opinion that the court should accept the offer [] that was written by the buyer of $50,000" . . . .
>
> * * * * *
>
> (14) Indiana Code 29-1-15-13 provides (in part)[,] "If real property is to be sold at private sale it shall direct that the same shall not be sold for less than the fair market value . . . ." . . .

(15) Attached is a document from Marlene Butcher, Broker Associate, Re/max Realty One, designating that a buyer (for the Darter property) approached her with an offer of $77,000.00. . . .

(16) Whether one takes the assessed valuation of $82,500.00 (from Carroll County, Indiana records) or the Romanski "fair price to list it at in the open market" of $65,000-$80,000 or the Re/max/Butcher offer to buy of $77,000.00, it is clear that the real estate of 33.17 acres with house was not sold for fair-market value.

(17) Said sale should be voided.

*Id*. at 104-05.

[10] On August 11, Banks filed a response to the motion. In her response, Banks stated that "[a]t all times relevant hereto," Richard resided at the Property. *See id*. at 128. Banks also stated that the March 17 notice of administration and order appointing personal representative was not returned from Richard's address as undeliverable. Moreover, notice of the June 30 hearing on the Petitions was mailed to him on June 4; the notice of hearing was not returned as undeliverable, but Richard did not attend the hearing or otherwise contest the sale of the Property. The response further stated as follows:

> 15. In support of the Motion, Richard Darter offers a letter from Ms. Marlene Butcher ("Ms. Butcher"), a Broker Associate, who states that a buyer offered to purchase the Property for $77,000[.] An offer to buy the Property, however, is not sufficient proof of the market value of the Property. *See Lucre Corp. v. County of Gibson*, 657 N.E.2d 150, 153-54 (Ind. Ct. App. 1995). Ms. Butcher's letter does not have a date to indicate when the offer was made. Furthermore, the alleged offer was not presented to the Personal Representative at any time prior to the filing of the Motion, nor is there any explanation provided to justify why Richard Darter was unable to provide this information at the June 30, 2014 hearing on the Petitions.
>
> 16. As set forth above, Richard Darter was provided with notice of the June 30, 2014 hearing on the Petitions in accordance with this Court's

June 4, 2014 Order, and has been on notice of the administration of the Estate since March 2014. He did not file any opposition to the Petitions, nor did he attend the June 30, 2014 hearing.

17. The sale of the Property was duly authorized by this Court after a review of the pleadings and the June 30, 2014 hearing on the matter, during which evidence was presented regarding the fair-market value of the Property and the reasonableness of the offer of purchase. Richard []'s attempt to set aside the sale is untimely and is not supported by evidence sufficient to rebut the Court's finding that the sale price of the Property was fair and reasonable, or to justify the reason that the alleged offer was not presented to Court at the June 30, 2014 hearing.

18. Moreover, the sale of the Property was authorized by the Court having the jurisdiction of the parties and the subject matter, notice of the time and place of the sale was given in a manner provided by law, and the property was sold accordingly and is held by one who purchased it in [g]ood faith and therefore cannot be voided on account of any irregularity or defect in the proceedings pursuant to Indiana Code [section] 29-1-15-19(a).

*Id*. at 131-32.

[11] Following a hearing on August 25, the trial court denied Richard's motion to correct errors. Richard now appeals.

# Discussion and Decision

[12] On appeal, Richard challenges the denial of his motion to correct errors and raises numerous subsidiary issues. We review a trial court's ruling on a motion to correct errors for an abuse of discretion. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2005), *reh'g denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts

and circumstances before the court or if the court has misinterpreted the law. *Hawkins v. Cannon*, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005), *trans. denied*.

[13] When a party files a motion to correct errors, he is not precluded from raising issues on appeal that were not included in the motion, unless it was an issue required to be included by Indiana Trial Rule 59(A). *Stone v. Stone*, 991 N.E.2d 992, 1004 (Ind. Ct. App. 2013), *aff'd on reh'g*, 4 N.E.3d 666 (Ind. Ct. App. 2013); *see* Ind. Trial Rule 59(A) (mandating motions to correct error as a prerequisite to appeal only when a party claims newly discovered evidence or that a jury verdict is excessive or inadequate). However, according to the rule, only "issues and grounds for appeal *appropriately preserved during trial* may be initially addressed in the appellate brief." Ind. Trial Rule 59(A) (emphasis added). Here, the only "trial" was the August 25 hearing on Richard's motion to correct errors; accordingly, we will review only the issues that were raised and "appropriately preserved" by Richard in that hearing. *See id*.

[14] In light of the above, we restate the issues before us as the following: (1) whether there was proper notice given of the proceedings leading up to the sale of the Property; and (2) whether the personal representatives violated statutory law and breached their fiduciary duties by petitioning the trial court to approve the sale of the Property that Richard alleges was for less than fair-market value.

# 1. Proper Notice

First, Richard alleges—as he did in his motion to correct errors—that he did not receive copies of the Petitions, the May 29 Order, and the June 30 Orders.[1] And there is evidence to support this allegation: the Chronological Case Summary entry for July 24, 2014 reads as follows: "Copy of Court Orders dated May 29, 2014 and June 30, 2014 and mailed to Richard Darter returned, 'return to sender, no mail receptacle, unable to forward.'" Appellant's App. p. 2. The record does not reveal what circumstances led to these mailings being returned nearly two months (in the case of the May 29 Order) after they were sent to the Property, or what happened to the mail receptacle at the Property.

There is no allegation, however, that Richard did not receive the March 17 Order giving notice of administration and appointing personal representative. Indiana Code section 29-1-7-7, the provision governing notice of administration in the probate code, provides in part as follows:

> (a) As soon as letters testamentary or of administration, general or special, supervised or unsupervised, have been issued, the clerk of the court shall publish notice of the estate administration.
>
> (b) The notice required under subsection (a) shall be published in a newspaper of general circulation, printed in the English language and published in the county where the court is located, once each week for two (2) consecutive weeks. . . .
>
> (c) The notice required under subsection (a) shall be served by first class postage prepaid mail on each heir . . . whose name and address is

---

[1] In the Appellant's Appendix, there is a document entitled "Verified Statement of Heirship of Robert F. Darter" that includes the following assertion: "[Richard's] address at th[e] time [of the Decedent's death] was 709 S. Cooper Street; Kokomo, IN 46901." This "statement" is signed by Richard and cited to in the appellant's brief, but it is undated and entirely unclear when and for what purpose this document was created.

set forth in the petition for probate or letters, except as otherwise ordered by the court. The personal representative shall furnish sufficient copies of the notice, prepared for mailing, and the clerk of the court shall mail the notice upon the issuance of letters.

[17] Ind. Code § 29-1-7-7. Here, the court ordered notice by publication and ordinary mail of the March 17 Order appointing Wills as personal representative and issuing the letters of administration. *See* Appellant's App. p. 3, 9 (Notice of Administration). The March 17 Order was sent via ordinary mail to a distribution list that included Richard at the Property's address. This mail was not returned. The notice of administration was published twice—on March 26 and April 2, 2014—in a newspaper of general circulation, the *Lafayette Journal and Courier*. *See id.* at 137. No objections were filed in response to the notice of administration.

[18] There is also no allegation that Richard did not receive the June 4 notice of the June 30 hearing on the Petitions. Indiana Code section 29-1-15-11 provides in part as follows:

> A personal representative may file a petition to sell, mortgage or lease any real property belonging to the estate. . . . Upon the filing of the petition, the court shall fix the time and place for the hearing thereof. Notice of the hearing, unless waived, shall be given to all heirs . . . and the notice shall state briefly the nature of the application and shall be given as provided IC 1971, 29-1-1-12. . . .

Ind. Code § 29-1-15-11. Indiana Code section 29-1-1-12, the general notice provision of the probate code, provides in part as follows: "Unless waived and except as otherwise provided by law, all notices required by this article to be served upon any person shall be served as the court shall direct by rule . . . ."

Ind. Code § 29-1-1-12(a). Here, the court ordered the notice of hearing to be sent to interested parties by ordinary mail, and the clerk sent notice to Richard at the Property's address on June 4. *See* Appellant's App. p. 3. This mail was not returned as undeliverable.

[19] The fact that notice of administration and notice of the June 30 hearing was mailed to Richard and was not returned creates a rebuttable presumption that he *did* receive these notices. *See Conrad v. Universal Fire & Cas. Ins. Co.*, 686 N.E.2d 840, 843 (Ind. 1997) (proof of mailing, by certified mail or by ordinary mail, creates a presumption of delivery, but the presumption of delivery may be rebutted where a certified letter is returned undelivered); *Saini v. Review Bd. of Ind. Dep't of Workforce Dev.*, 5 N.E.3d 768, 773 (Ind. Ct. App. 2014) (where an administrative agency sends notice through the regular course of mail, a presumption arises that the notice was received).

[20] In addition to the notice of administration and the notice of hearing not being returned, Banks represented to the trial court in the Petition to sell the Property and at the hearing on the Petitions that Richard was, in fact, living at the Property. As stated by Banks at the June 30 hearing: "So [Richard]'s currently living on the property. We have not received any offer to pay rent or to purchase the property." Tr. p. 1-2 (June 30 Hearing). In the May 23 assessment of the Property written by real estate agent Romanski, which was offered as Exhibit C of the Petition to sell the Property, Romanski writes that "the buyer is willing to take on the responsibility of removing what will likely be [an] uncooperating resident," referring to Richard. Appellant's App. p. 80.

At the hearing on Richard's motion to correct error, Banks stated that she had a witness present, Adam Light, "who actually visited the property and has seen Mr. Darter at the Property as well." Tr. p. 15 (Aug. 25 Hearing). Banks then told the court that the "Sheriff was there as well when he was there." *Id.* at 15.

[21] In light of the above—and despite the fact that other notices were returned as undeliverable on July 24—we find the evidence is sufficient for the trial court to have concluded that notice was adequate. We will not reweigh the evidence on appeal. We find no abuse of discretion with regard to the issue of notice.

## 2. Sale of the Property

[22] Next, Richard contends that the personal representatives failed to comply with Indiana Code sections 29-1-15-13 and -14, the statutes governing the sale and valuation of property, and breached their fiduciary duties by asking the trial court to approve the sale of the Property for $50,000. Indiana Code section 29-1-15-13 sets forth the mechanics of a court-ordered sale of property:

> The [court] order shall describe the property to be sold, mortgaged or leased . . . . An order for sale shall direct whether the property shall be sold at private sale or public auction and, if the latter, the place or places of sale. If real property is to be sold at private sale it shall direct that the same shall not be sold for less than the fair market value . . . .

The method for determining fair market value is set forth in Indiana Code section 29-1-15-14, which provides in part as follows:

> The value of the property for the purposes of a sale of real property . . . shall be the fair market value filed with the inventory unless the court directs that the property be appraised or reappraised, as the case may

be. In the event appraisal is ordered by the court, . . . the property shall be appraised at its fair market value . . . in a manner considered appropriate by the court.

[23] Here, personal representative Wills filed a verified inventory on May 21, 2014, which states "[t]he tax-assessed value of the Property is $120,700." Appellant's App. p. 44. Attached to this verified inventory is a warranty deed and a multi-page report of the Property prepared by Beacon/The Schneider Corporation which concludes that the "Assessed Value" and the "True Tax Value" of the Property on March 1, 2013, were both $120,700. *See id.* at 51.

[24] Richard now argues that the personal representatives violated Indiana Code sections 29-1-15-13 and -14 and breached their fiduciary duties by petitioning the trial court to approve a sale price of $50,000, which Richard contends is less than fair-market value and less than the value set forth in the inventory. But Indiana Code section 29-1-15-14 provides that the fair market value of a property for purposes of sale is the fair market value set forth in the inventory, "unless the court directs that the property be appraised or reappraised[.]"

[25] Here, the evidence included realtor Romanski's letter appraising the Property at $50,000. The trial court credited Romanski's assessment, considering it "reliable evidence of the fair-market value of the Property [which], together with the other evidence proffered by the Personal Representative, constituted a sufficient basis to authorize the sale of the Property." Appellee's Br. p. 26. In other words, the trial court considered Romanski's letter an "appropriate" appraisal of the Property's fair-market value. *See* I.C. § 29-1-15-14 ("[T]he property shall be appraised at its fair market value . . . in a manner considered

appropriate by the court."). On appeal, we will not reweigh the evidence that was before the trial court. We find that the personal representatives did not violate statute or breach their fiduciary duties to the Estate by petitioning the trial court to approve the sale to Daniels, LLC. We therefore find that the trial court did not abuse its discretion by denying Richard's motion to correct errors.

Affirmed.

Kirsch, J., and Bradford, J., concur.